Hitchcock, J.
On the 16th day of June, 1832, John Christmas, then of Wooster, in the county of Wayne, made his last will and testament, in which he devised all his estate, both real and personal, after the payment of debts, to his seven children, or their representatives, share and share alike; providing, in the same will, that advances which he had made to each child should be deducted from such child’s share, and charging his son William with debts to the amount of ten thousand dollars or more, to be deducted from his share. On the 1st of August, 1835, he made a codicil to said will, and republished the same. He died on the 22d of November, 1835; and the executors, named in the will, refusing to act as such, the will was proved, and Samuel Quinby, one of the defendants, appointed administrator with the will annexed.
*601 A portion of the property of which the said John was possessed, at the time of the execution of the will, consisted of a farm, adjoining the town of Wooster, containing one hundred and fifty-seven acres of land, on which he resided at the time of his death.
On the 6th of February, 1835, he conveyed this farm to Thomas Fassitt, of Philadelphia, reserving to himsalf a life estate, for the enjoyment of which he was to pay the taxes. The consideration of this deed was $6,000. About $4,800 was applied in satisfaction of a debt due from John Christmas to Fassitt, and which had been due and accumulating since 1816. The residue of the consideration, amounting to about $1,200, was to be paid by Fassitt in money, and was paid to William Christmas upon the order of John Christmas.
On the 15 th of September, 1835, Thomas Fassitt, by written agreement, contracted to convey the same land to William Christmas for the same sum allowed and paid by Fassitt for it, with the interest thereon at 7¿ per cent.
On the 15th of December, 1835, William Christmas contracted to sell one-fourth of said farm to Cyrus Spink, who was his brother-in-law, for $2,500, payment to be made in five years.
William Christmas died in September, 1836, and his executors, Hiram Griswold and Isaac Harter, are made defendants.
The bill was filed in 1840. Although very prolix, the substance of the charges are, that in February, 1835, and for years before that time, John Christmas was old and infirm, very much enfeebled both in body and mind, and was, in fact, incapable of transacting business ; that he had great confidence in his son William, who had a controlling influence over him ; that William, having learned the nature of his father’s will, and with a view to defraud the complainants, who are legatees under that will, combined with Fassitt, and so exerted his influence over his father as to induce him to convey the land in controversy to Fassitt, at a price much under its actual value, with an understanding between him, William, and Fassitt, that Fassitt *602 should reconvey the land to him, William; that, in order to induee the said John to make said conveyance, he represented him that the consideration of the deed was eight thousand dollars, and so read the deed to him; that, in order to carry out the combination, Fassitt soon afterwards contracted to convey said land to said William, and that the same was conveyed to him; that at the time the contract was made with Spink, by which he became interested in the land, or before the same was paid for and deed made, Spink had full notice of the fraudulent conduct of William; that since the death of William, his executors, in connection with Spink, have caused a part of said farm to be laid out in town lots, have sold a part of the same, and have realized more than sufficient money to pay the whole amount of consideration named in the deed from John Christmas to Fassitt.
The prayer of the bill is, that the heirs at law and executors of William Christmas, and the said Spink, may be compelled to account for the rents and profits of said estate, and for all the moneys by them realized or received, or yet due or to become due for the sale of lots upon said premises, that may be found due over and above the amount of the debt to said Fassitt, and that said Spink and others may be declared to hold in trust for, and decreed to convey to the complainants their several shares of the premises yet unsold.
There is a further prayer for general relief.
Cyrus Spink, Samuel Qninby, administrator with the will annexed of John Christmas, Griswold and Harter, executors of the last will'and testament of William Christmas, have severally answered. It is unnecessary to say any thing further with respect to these answers, than that all knowledge or belief of any fraudulent acts, as charged in the bill, is denied.
To make a full abstract of the depositions and exhibits would take more time than is ordinarily appropriated to a term of the court. They are very voluminous, and we have examined them with care, more especially those introduced by complainants.
*603 The charges in the bill are of a grave and serious nature, as they affect the character of the deceased, William Christmas. He is charged with falsehood towards his father, that he might cheat his brothers and sisters out of the legacies left to them by that father. It is no ordinary fraud that is imputed to him. It is a charge which ought not to have been made, unless sustained by conclusive evidence. How far it is sustained, depends upon the testimony.
The first charge is, that John Christmas was old and weak in body and mind. The testimony fully sustains this charge, but it does not show that his mental faculties were so far impaired that a conveyance made by him could be avoided on this account. In fact, the will itself, under which the complainants claim, was executed after his mental faculties had measurably failed, and the codicil was executed months after the deed to Fassitt.
The next charge is, that he put great confidence in his son, William, and that William exercised a controlling influence over him. That he put great trust and confidence in William, is abundantly proved. That William had influence over him, is also proved. But, that he had any controlling influence, does not appear.
It is next charged that William obtained knowledge of his father’s will, before the sale of the land to Fassitt. Of this there is no proof; nor is there any thing proved from which it can be inferred that he knew any thing of the contents of the will, until after his father’s death.
It is next charged that, with a view to defraud the complainants of their legacies, he exerted his influence with his father to induce him to make the conveyance to Fassitt. Of this there is no proof. There is no testimony that he ever solicited or even advised his father to make that conveyance. It is not improbable that he did so advise; but it is mere presumption.
It is then charged that the consideration paid by Fassitt, for the land, was not its full value. Upon this point, the testimony is conflicting; but the decided weight of that testimony is, that *604 six thousand dollars was a great and full price for the land at the time it was sold, although it afterwards increased in value; and the evidence shows that this increasé in value was caused by the anticipation that a canal would be eventually constructed across or over it.
It is next charged that all this was done in pursuance of an understanding, between William and Fassitt, that when the latter had got a conveyance of the land he should convey it to the former. Here there is an entire absence of proof. So far as the facts can be ascertained from the evidence, at the time this conveyance was made, William did not expect to become the owner. Some six or seven months afterwards, however, he did enter into a contract with Fassitt, by which he got the control of the property.
Another charge is, that William represented to his father that the consideration he was to receive was eight thousand dollars, and that he so read the deed to him. This charge is measurably sustained by the testimony of Susannah Yarnal, the housekeeper of John Christmas; and, perhaps, if there was no other evidence bearing upon the point, it might be considered as proved. But the testimony of this witness is not supported by the other proofs in the case. That there was talk about eight thousand dollars, as the value of the property, and of six thousand, there can be no doubt. But the most obvious explanation of the whole matter is this: John Christmas had previously offered to convey the property to Fassitt for eight thousand dollars, and was anxious he should take it. This was more than the land was worth; and the final arrangement was, that Fassitt should have it at six thousand, allowing John Christmas a life estate in it. This life estate was taken 'into the estimate to make up the eight thousand dollars which was talked about, and of which this witness heard. She says, that a few weeks after the deed was executed, the old gentleman became discontented about it, and wrote to William; that William returned an answer, saying, “ all was right,” with which his father was entirely satisfied. A letter is produced from William to his *605 father, found among his father’s papers, answering, in point of time, to the letter spoken of by the witness. In this letter he informs his father that he has had returns from Fassitt, and ascertained the amount of the debt. He then goes on to state an account, charging Fassitt with $6,000, as the consideration for the land, and crediting him with the amount of the debt. He next strikes the balance, and finds due to his father more than $1,200. There is nothing like concealment or deception in the letter; nothing said about $8,000 and all being “ right.” Every thing is plain, frank, and open. At the close, he congratulates his father that the “ national debt ” is paid, and there is still due to him $1,200. This letter, of itself, is sufficient to show, that the witness must have been mistaken in supposing that, when the deed was read, the consideration named was eight thousand dollars. But it does not stand alone. Lizer, one of the witnesses to, and Schucker, the justice who took the acknowledgment of the deed, both understood the actual consideration to be six thousand dollars, although there was talk about eight thousand.
Such are the charges of fraud in this transaction as made in the bill, and they are entirely unsustained by the evidence. The real and true stale of the matter was-this; John Christmas had been long indebted to Fassitt. The debt had been running on for nineteen or twenty years.. Fassitt thought it was time it was paid, and Christmas was anxious to pay it. He offered the farm in payment, long before the arrangement was finally made. At length William, who was acquainted with Fassitt, and possessed his confidence, engaged in the business. He procured the land to be appraised, and after the appraisal his father executed the deed. He wrote to Fassitt, informing him what had been done, and stating to him that if he was satisfied with the arrangement, he would cause the deed to be recorded. Fassitt, in reply, expressed, his approbation, and the deed was recorded. From the whole evidence in the case, it is apparent that the arrangement was, under the then existing circumstances, a beneficial one for John Christmas. *606 Nor do we believe, that had Fassitt pressed the collection of bis debt in due course of law, that that debt would have been satisfied by the sale of the farm.
Although William Christmas possessed the confidence of his father, there is nothing to excite a suspicion that he abused that confidence. On the contrary, it is apparent that he ever manifested an anxious solicitude to protect and promote the interests of that father; and further, that he always treated him ■ with filial kindness, affection, and respect.
There being no fraud as between William Christmas, Thos. Fassitt, and John Christmas, in the original transaction, the complainants do not make out a case, and their bill must be dismissed with costs.