Williams, J.
The particular provision of the constitution with which the statute is claimed to be in conflict, is section 26 of article 2, which requires that “ All laws, of a general nature, shall have a uniform operation throughout the state.”
This provision of the constitution, it has been uniformly held by this court, is mandatory and not directory merely. State v. Kelly, 6 Ohio St. 269; Falk, Exp., 42 Ohio St. 638; State v. Powers, 38 Ohio St. 54, 63. In the language of Scott, J., in Kelly v. State, 6 Ohio St. 269, it is “ a general, unqualified and positive prohibition or limitation of legislative power, forbidding the giving of a partial operation to any law of a general nature — or in its own affirmative terms, requiring that a uniform operation throughout the state shall be given to all laws of a general nature.”
The purpose of the provision, and the evils intended to be remedied by it, have been repeatedly declared, and pointed out in the decisions of this court. In Lehman v. McBride, 15 Ohio St. 605, it is said that, “ Under the former constitution, laws having a general subject matter, and therefore, ‘ of a general nature,’ were frequently limited expressly, in their operation, to one or more counties, to the exclusion of other portions of the state. As a consequence, on the same subject, there might be one law for Hamilton county, another for Franklin, and still a third for Ashtabula. This naturally led to improvident legislation, enacted by the votes of legislators who wore indifferent in the premises, because their own immediate constituents were not affected by it. To arrest, and, for the future, prevent this evil, the provision in question was inserted in the present constitution.” Upon this subject it was said, by Boynton, J., in McGrill v. State, 34 Ohio St. 228, that “ A general law, that land should not be sold upon execution for less than two thirds of its appraised value was excluded - from operation in several *94 counties by local enactment. There were different laws in different counties respecting the descent and distribution of intestate property. Some statutes defining legal offenses were excluded' in their operation from a large part of the state; and different penalties for a violation.of the same act, were, in some instances, provided for different localities. These are examples of the legislation, to prevent which in the future, and the mischief resulting from it, this provision of the constitution was adopted.” And see Falk, Exp., 42 Ohio St. 638.
Whether a statute be a law of a general nature or not, depends, it is conceded, upon its subject matter, and not upon its form; and, hence, to come within this constitutional inhibition, it is not necessary that the statute be general in form. Nor, can it be maintained that because the act is local in form, it must be presumed that there was some sufficient local necessity for its enactment; for this would totally defeat the provision of the constitution. If it must be assumed, merely because the statute has been enacted, that the legislature had information showing that there was a necessity for such legislation with respect to the particular locality, it would follow that all legislation, local in form, must be upheld, however general the nature and subject matter of such legislation might be. Speaking upon this subject, Okby, J., in the opinion in Falk, Exp. supra, says: “We are not willing, nor are we permitted, to adopt any such rule of construction; and, indeed, to do so would be in effect to unsay what we have deliberately said as to the mandatory character of the constitutional provision we are considering.”
The statute in question, purports to be general, applying to all counties of a designated class, and to establish for them a general system of law regulating the custody, investment and disbursement of their public funds and revenues. But it is admitted by the answer, that Summit, is the only county in the state coming within the description of the statute, and hence, the only one to which it can apply. And, inasmuch, as no other county can ever come within the operation of the statute, there is no ground for the application of that rule of *95 classification, under which, legislation applicable to classes of municipal corporations, into which others may enter, or be admitted bjr the increase of population, has been frequently sustained by this court. Slate v. Anderson, 44 Ohio St. 247.
The act, in substance, provides that the county commissioners shall, in a specified mode, contract with one or more banking institutions, incorporated under the laws of this state, or of the United States, for the loan of the public money in the county treasury, at a rate of interest not less than two per centum, and that the county treasurer, upon receiving written notice from the commissioners, that such contract has been awarded, naming the bank selected as such depositary, shall deposit in such bank to the credit of the county, all moneys in his possession ; and, thereafter, daily, in like manner, deposit all moneys received by him, on the preceding business day. These contracts for loaning the money, are required to be renewed, or new ones made, every six months, and provision is made for removing the money from the possession of the last to that of the succeeding borrower. The money so deposited, shall bear interest at the rate agreed upon, to be computed on the daily balances, “and such interest shall he placed to the credit of the county on the first day of March and September each year, or at any time when the account may be closed.” The act then points out in detail, the mode of disbursing the funds by the depositary upon checks drawn by the treasurer, the duties of the auditor and treasurer with respect thereto, and prescribes an elaborate method for keeping the fiscal accounts and preserving the vouchers. Under one of its provisions, the treasurer majr retain in his custody, funds not exceeding five thousand dollars, with which to pay jurors and witnesses their fees, and warrants payable from the soldier’s relief fund.
The subject of the statute, is the custody, safe-keeping and disbursement of the public revenues, and the duties of public officers concerning them. Included in these revenues, are the moneys collected on the levy for the payment of the interest and principal of the public debt of the state, the general revenue fund, the state common school fund, money collected *96 from the tax on the business of trafficking in intoxicating liquors, a portion of which goes into the revenues of the state, taxes levied for defraying county expenses, repairing roads and bridges, and keeping the poor, as well as those collected upon special levies for school, county, township and municipal purposes, and all other public money, from whatever source derived, coming to the hands of the county treasurer. In the safekeeping and proper disbursement of these funds, are involved, the credit of the state, the due administration of the state government, the efficiency of the common school system, the proper maintenance and management of the benevolent- and penal institutions, and other matters of public concern, in which the tax-payers and people of the state at large, have important, if not equal interests.
Hitherto the whole subject of keeping and disbursing, as well as raising the public .revenues, has been regarded of such common interest to all the people of the state, that it has been regulated by a general law operating uniformly throughout the state. County treasurers are required to be elected in the several counties, and they hold their office, for the same terms. They are, in their respective counties, made the collecting and disbursing officers of the public revenues. The same general duties are enjoined upon them, in the discharge of which, the same legal machinery is employed, and the performance of which, are secured and enforced in the same manner. The county commissioners are “required to provide all such rooms, and fire and burglar proof vaults and safes, and other means of security in the office of the county treasury, as are necessary for the perfect protection of the public moneys and property therein.” Rev. Stats., sec. 859. The treasury is subject to frequent examinations, with or without notice to the treasurer, and severe penalties and forfeitures are imposed for his delinquency or malfeasance. He is required at prescribed periods to make settlements with the state auditor, and pay over to the state treasurer, all money belonging to the state.
It is claimed, however, that statutes, local in their application, are not necessarily invalid because there is a general *97 statute in force, under the provisions of which, the same object may be accomplished that is sought by the local statute, and embracing the same subject matter. This may undoubtedly be true, but the local statute must be upon a subject in its nature local, as well as local in its operation. Such was the statute under review in State v. Shearer, 46 Ohio St. 275.
That act was one to establish a special school district comprising certain described territory in a specified township. The general statutes in force at the time, provided a mode for the creation of special, districts. The decision of the case is placed upon the ground that the subject matter of the statute was local in its nature, and was so treated by the general legislation pertaining to the subject.
With respect to the general statute upon the subject, Speak, J., in the opinion, says: “ The idea pervading the statute, as to this feature is, that the needs of the people of the different townships will be different; that, while in one the education of the youth may be reasonably attained by constituting the whole territory into one district, in an adjoining township the same object can be better attained by dividing the territory into subdistricts, or by carving out of the territory of the township a portion into a special district, or, by reason of changed conditions, by the consolidation of subdistricts. This implies that the question of whether territory in a given locality shall be formed into one kind of a district, or another, will be determined by considerations of local convenience, and that no division by a rule which shall be fixed, arbitrary and uniform, will meet the requirements of all sections. It is foreseen that changes will be necessary from time to time, and power is given to boards of education to initiate such changes, and the same may be brought about in any of the several localities without reference to, or disturbance of, neigh: boring districts not geographically affected, or the schools within them. Clearly, then, in the judgment of the framers of the general law, divisions of territory into districts is matter of local concern.” In the same opinion it is further said, “the question of division of territory, like that of the erection of school houses, and the procuring of apparatus and other *98 property necessary for the nse of the schools, would seem to be so far of local concern merely that special necessities might safely be left to be provided for by special enactments.”
It is apparent that the general statutes relating to the custody and disbursement of the revenues, do not contemplate any local conditions permitting the removal of the public moneys from the custody of the county treasury, as the place of their deposit, and safekeeping; ifor, that they should be held and paid out otherwise than by the treasurer. These regulations are not founded upon any considerations merely local, nor is the subject local in its nature, but as we have already seen, is of general public interest. What local circumstance, or condition can there be with respect to the subject, in any county, that does not also exist in every other county? Or what considerations are there, rendering the application of this particular statute, adopting such radical changes, necessary or advisable in Summit county, that do not make it equally necessary or advisable in each of the counties of the state ? It is not contended that there are any, and none are perceived. If it be said, that a safe place of deposit in the county treasury has not been provided, or that it has become temporarily unsafe, or that the incumbent of the office is incompetent or unfaithful, the same condition of things is liable to occur in other counties, and as much so in one, as another; for, the same requirements are made by law for providing Summit county with a safe place for the deposit of the public money in the treasurer’s office, as are, for every other county, and in each county, the same regulations are in force,- for choosing the officer, securing and enforcing the performance of his duties, detecting and punishing his defalcations, and for removing him from office and filling the vacancy. If such conditions should exist in any county, they must in their nature be temporary. In view of the law, it can hardly be supposed that the treasurer’s office has not been furnished with the necessary vaults, or places for the safe deposit of the public funds; and, if such vaults or places have been destroyed, or become unsafe, the duty of the county commissioners is imperative, to at once restore them, and make *99 them safe. Unfaithfulness on the part of public officers is exceptional, integrity and competency the rule. Official misconduct is, therefore, not to be presumed, and generally, when it occurs, measures are promptly taken to prevent its continuance or recurrence. Obviously, the statute which the defendants claim confers upon them the'powers and franchises they are charged with exercising, was not adopted to meet merely temporary or local emergencies or conditions. It enacts for Summit county a permanent and comprehensive system of law, relating to the custody and disbursement of the public funds, not only essentially different from that established for the remainder of the state by the general statutes, but directly at variance with it. It is the experiment of a new scheme, general in its nature, and local only in its application. It strips the present, and each succeeding county treasurer, of many of the important functions of his office, and makes him little more than a mere conduit for the transmission of the public moneys from the hands of the taxpayers, and other sources of-revenue, to the bank selected as the depositary. It changes the place of their safe keeping, removes the safeguards provided for their security and the protection of the public, and substitutes for them others wholly different, and changes the whole method of disbursement, and the system of fiscal accounts.
We are not to be understood as calling in question the wisdom or policy of the statute. The system it provides for the safe keeping and disbursement of the public money of Summit county, may be, in every way a better one than that established by the general statute. But if it be so for Summit county, it must likewise be so for every other county, for the conditions that make it so, exist in each alike.
Then, the effect of this statute, if valid, is to give partial operation to the criminal laws, and prevent their uniform operation throughout the state.
The criminal code, Rev. Stats., sec. 6841, makes it a felony for any person charged with the collection, receipt, safe keeping, transfer, or disbursement of the public money or any part thereof, belonging to the state, or to any county, town* *100 ship, municipal corporation, or board of education in this state, to loan, with or without interest, to any company, corporation or individual, or to deposit with any company, corporation, or individual, any portion of the public money, or any other funds, property, bonds, securities, assets, or effects of any kind, received,’ controlled, or held by him for safe keeping, transfer, or disbursement, or in any other way or manner, or for any other purpose. And the offender may be imprisoned in the penitentiary for. a term of years, and heavily fined.
Any county treasurer who should deposit the public moneys in any bank, with or without interest, and whether so directed by the county commissioners or not, would be guilty of a violation of this section, and subject to the punishment it prescribes. And if the county commissioners should advise and direct such deposit to be made, they would be equally guilty. It is sought to take Summit county and its officers, out of the operation of this section, and relieve the latter from the consequences of its violation, by sec. 18 of the statute in question, which enacts that “ Any provision of the statutes of this state in force when this act takes effect, which conflicts with any provision of this act, shall be held to be superseded by the latter, as to the matter of inconsistency, and not otherwise, in counties to which tins act relates.”
The penal part of that statute is contained in sec. 17, which provides that “ An officer of any such county who willfully violates any provisions of this act, or willfully neglects or refuses to perform any duty thereby imposed upon him, shall upon conviction thereof in the court of common pleas, be fined in any sum not exceeding ten thousand dollars, for the use of the county, or be imprisoned in the penitentiary not more than ten years nor less than one year, or both, at the discretion of the court.”
Thus it appears, if effect be given to this statute, that while it is a felony for the treasurer of any county, except Summit, to deposit the public moneys in a bank, or for the commissioners to advise or direct such deposit to be made, it *101 is perfectly lawful for the treasurer of Summit county to deposit the public moneys of that county in banks, and for the commissioners to advise and direct the same to be done. Not only so, but in that county the refusal of the treasurer to make the deposit, or of the commissioners to select the bank and direct the deposit, is made a felony. In other words, under the operation of this statute, acts, which in one county are innocent, and the faithful performance of official dnty, are made grave crimes if done in any other county; and, on the other hand, that which is innocent and the faithful performance of official duty in the latter is a crime of equal gravity in the former. It cannot be claimed that these highly penal provisions are merely police regulations. Whether, therefore, the same act be lawful, or criminal, is made to depend upon the boundary of a county line. This would be a somewhat singular state of tire law; at least, it is that state of legislation, which, as already seen, according to the former decisions of this court, the particular provision of the constitution we have been considering, was designed to interdict.
We are therefore of opinion that the statute, upon which the defendants rely, as the source of their authority for the powers and franchises they have assumed to exercise, is a law of a general nature, applicable only to Summit county, there being no other county having the specified population and containing a city of the designated class and grade, and is in conflict with section 26 of article 2 of the constitution of this state, which requires, that “ All laws of a general nature shall have a uniform operation throughout the state.”
Demurrer to answer sustained, and judgment of ouster.